# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § | CIVIL ACTION 6:20-CV-00454-ADA CIVIL ACTION 6:20-CV-00455-ADA CIVIL ACTION 6:20-CV-00456-ADA |
| | § § | CIVIL ACTION 6:20-CV-00457-ADA CIVIL ACTION 6:20-CV-00458-ADA |
| Plaintiff, | § § | CIVIL ACTION 6:20-CV-00459-ADA CIVIL ACTION 6:20-CV-00460-ADA |
| v. | § § | CIVIL ACTION 6:20-CV-00461-ADA CIVIL ACTION 6:20-CV-00462-ADA |
| MICROSOFT CORPORATION, | § § | CIVIL ACTION 6:20-CV-00463-ADA CIVIL ACTION 6:20-CV-00464-ADA |
| Defendant. | § § | CIVIL ACTION 6:20-CV-00465-ADA |
| | § § | PATENT CASE |
| | § § | |
| | § § | |
| | § § | JURY TRIAL DEMANDED |
| | § | |

## RESPONSE OPPOSING MOTION TO TRANSFER VENUE

This is case of first impression for the Court. The Court has yet to face a motion to transfer venue filed by a defendant where the Plaintiff not only resides and conducts business in the Western District of Texas but does so in the Waco Division. Because these twelve actions are all significantly connected to the Waco Division and the Austin Division is not a *clearly* more convenient forum, the Court should deny Microsoft Corporation's ("Microsoft") intra-district transfer.

## INTRODUCTION

A party seeking a transfer to an allegedly more convenient forum carries a significant burden. *Babbage Holdings, LLC v. 505 Games (U.S.), Inc.*, No. 2:13-CV-749, 2014 U.S. Dist. LEXIS 139195, at *12–14 (E.D. Tex. Oct. 1, 2014) (stating the movant has the "evidentiary burden" to establish "that the desired forum is clearly more convenient than the forum where the case was filed."). Microsoft does not contest that venue is proper, nor could it. *See* Def.'s Mot. at 1, ECF No. 31.[1] The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *UNILOC 2017 LLC v. Apple*, No. 6-19-cv-00532-ADA, 2020 WL 3415880, at *1 (W.D. Tex. Jun. 22, 2020). Microsoft relies heavily on the fact that this Court has transferred other patent cases between it and other plaintiffs to the Austin Division. Def.'s Mot. at 6. However, Microsoft conveniently omits WSOU's significant presence in this judicial Division. Moreover, in the cases cited by Microsoft, none of the plaintiffs had *any* presence in the Waco Division. *See, e.g., VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *2 (W.D. Tex. Oct. 7, 2019) (stating VLSI has no presence in Waco); *Voxer, Inc. v. Facebook, Inc.,* No. 6:20-CV-00011-ADA, 2020 WL 3416012, at *7 (W.D. Tex. Oct. 7, 2019) (stating Voxer has no significant presence in the Waco Division).

## BACKGROUND

**A. WSOU is headquartered in Waco and invested in the Waco community.**

Plaintiff WSOU Investments, LLC doing business as Brazos Licensing and Development

---

[1] Defendant filed the same motion in 12 cases. Cites in this response refer to the docket in the -454 case.

("WSOU") is a Waco-based company that leverages its proprietary technology and management experience to help inventors and patent owners maximize the full potential of their patents. Hogan Decl. ¶ 1. Not only does WSOU operate out of downtown Waco (WSOU's principal place of business), less than two blocks from the Waco Division Courthouse, WSOU has established deep roots within the Waco community. *Id.* WSOU chose Waco as its headquarters because it was attracted to the burgeoning tech business in Waco, with Baylor acting as the anchor. *Id.* ¶ 3. WSOU's sources of proof are kept in Waco. *Id.* Notably, WSOU has no offices, no documents, nor any employees in Austin. *Id.*

WSOU's Managing Director of Business Development, Matt Hogan, resides and works in Waco. *Id.* ¶2. Before working with WSOU, Mr. Hogan spent 7 years on Wall Street, and then was the founding CEO of a company that pioneered consumer data control. WSOU considered Mr. Hogan a good fit for its Headquarters in Waco in part because of his close ties to the Waco community, including family members who are Baylor alumni.

WSOU has already engaged in hiring students from Baylor University to support its business , and currently utilizes a local business to maintain its servers. Hogan Decl. ¶¶ 4-5. Before COVID-19 delayed its efforts, WSOU was working to start a local tech meetup in Waco. With Startup Waco[2] recently re-opening on a limited basis, WSOU has already resumed its collaborative efforts in the community. *Id.* WSOU is also working with the Baylor Law IP clinic to offer a quarterly webinar series for Baylor law students. *Id.* WSOU has had ongoing email correspondence with Waco Ventures, a group that manages outside-facing dealings for the Baylor Transfer Technology Office. *Id.* ¶ 6. WSOU has job postings in Waco LPA, Startup Waco, and Waco TXjobs, and is in the search process to hire several Baylor students. *Id.* In establishing its Waco headquarters, WSOU has purchased services from several local Waco companies. *Id.* This includes, for example, an approximately $80,000 renovation project by a local construction company. *Id.*

---

[2] Startup Waco is in downtown Waco and is a place for designers, developers, entrepreneurs, and others interested in the Waco startup community to connect.
*See* https://members.startupwaco.com/.

Clearly, WSOU is firmly rooted in Waco.

**B.  Microsoft's Declarations**

In support of its motion to transfer, Microsoft offers two employee declarations, one offered by a Human Resources Data Group Manager (the "Eaves Decl.") and one offered by a Director, Western United States in the Real Estate & Facilities group at Microsoft Corporation (the "Park Decl."). *See* Dkt. 31-1 (Eaves Decl.); Dkt. 31-2 (Park Decl.).

Neither declaration claims there are any relevant Microsoft documents in the Austin Division. The Eaves Declaration claims Microsoft's "engineering, sales, and financial documents are primarily located in Redmond, Washington" but does not say where other relevant documents, if any, are located. *See* Eaves Decl. ¶ 8. It claims Microsoft is "not aware of any documents related to the accused products located in the Waco Division" but does not claim Microsoft is aware of any such documents in the Austin Division. The Park Declaration is restricted to testimony concerning Microsoft office space and offers no testimony concerning the alleged location of relevant documents. *See* Dkt. 31-2.

Neither declaration identifies any specific Microsoft employees who allegedly have relevant knowledge that would make them potential witnesses. The Eaves Declaration generically describes the number of Microsoft personnel allegedly in the state of Texas, including some allegedly in Austin. *See* Eaves Decl. Microsoft alleges it has 20 employees in "Marketing groups in the state of Texas" and "11 who work in Austin." *Id.* ¶ 8. Microsoft does not identify who these employees are or what knowledge they have that would make them potential witnesses. It does not claim it intends to call any as trial witnesses. Further, it does not disclose where they reside (by city) or whether they work remotely.

In seven of the above-captioned cases (455, 456, 457, 458, 460, 462 and 464), the Eaves Declaration admits there are <u>no</u> Microsoft personnel in Austin in the "relevant organization at Microsoft." *See* Def.'s Mot. at 9-10 (citing Eaves Declaration). In the 459 and 463 cases, Microsoft admits there are only two personnel in Austin in the "relevant organization at Microsoft." *Id.* (citing Eaves Decl. ¶ 11). In the 461 case, Microsoft admits there are only three Austin personnel in the

3

relevant organization at Microsoft. Def.'s Mot. at 9-10. In the 455 and 457 cases, Microsoft claims that 20 personnel are in Austin and 7,801 are in Redmond, Washington. *Id.* at 10.

The Eaves Declaration does not specifically identify any of the employees who allegedly work in Austin and does not offer any evidence that they have knowledge that would make them potential witnesses. It does not disclose where they reside and instead only discloses the "facilities" or "home offices" to which they are assigned. *See* Eaves Decl. ¶¶ 7, 14. It does not disclose whether any of these unidentified employees work from home. Microsoft's Park Declaration admits many or most of the employees assigned to work in "facilities" in Austin currently work offsite due to COVID-19 restrictions. Dkt. 31-2 ¶ 4, n.1.[3]

Additionally, Microsoft also points to the fact that none of the 31 inventors reside in Waco. Def.'s Mot. at 4. However, the inventors do not live in Austin either. Thus, for the purposes of convenience, the different inventors' locations are irrelevant for purposes of Microsoft's motion to transfer. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1330 (Fed. Cir. 2014) ("the comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in paces outside both forums.").

## LEGAL STANDARD

While it is within a district court's sound discretion to transfer venue, the court must evaluate the particular circumstances, and the party seeking transfer must show good cause, demonstrating that the transferee venue is *"clearly more convenient." In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (emphasis added). Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, "it is nonetheless taken into account as it places a *significant burden* on the movant to show good cause for the transfer." *Id.* at 314 n.10 (emphasis added). When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice.

---

[3] On the other hand, WSOU does have a relevant trial witness located within the Waco Division because Matt Hogan resides in Waco.

**ARGUMENT**

Microsoft's motion should be denied because Microsoft fails to satisfy its significant burden of proving the Austin Division is clearly more convenient than the Waco Division.

**A.     The private interest factors do not favor transfer.**

*1.   Ease of access to sources of proof weighs against transfer.*

Ease of access to sources of proof weighs against transfer because there are relevant documents in Waco and no relevant documents in Austin. WSOU keeps its sources of proof at its office in Waco and has no documents in Austin. Hogan Decl. ¶ 7. Microsoft admits it has no documents in Austin or Waco. Def.'s Mot. at 8 ("any relevant Microsoft evidence is located in Redmond, Washington."). Instead, it claims "any relevant Microsoft evidence is located in Redmond, Washington." Def.'s Mot. at 8.[4] If Microsoft was seeking transfer to Washington, then the location of Microsoft's documents would be relevant to the determination of this Motion. However, the presence of documents in Redmond, Washington is irrelevant. *See In re Toyota Motor Corp.*, 747 F.3d at 1341 ("the comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."). Thus, this factor weighs heavily against transfer.

*2.   Microsoft fails to prove the availability of compulsory process favors transfer.*

Microsoft admits the availability of compulsory process does not weigh in favor of transfer. Def.'s Mot. at 14-15. Microsoft's office in Austin is within 100 miles of the Waco Courthouse.[5] Thus, if there are employees who work at the Austin office who have relevant information (something Microsoft has not proved), they are within the subpoena power of this Court.

---

[4] Further, Microsoft offers no evidence that employees allegedly in Austin have relevant documents. In five of the twelve cases where Microsoft filed its motion, Microsoft claims there are employees who work in the "relevant Microsoft organization" in "facilities" in Austin but does not identify these employees or claim they keep relevant documents in Austin. Def.'s Mot. at 9-10. In seven of the cases, Microsoft admits there are *no* employees in Austin. *Id.*

[5] Microsoft's office in Austin is located at 10900 Stonelake Boulevard, Suite 225, Austin, TX, 78759. Park Decl. ¶ 4. It is less than 100 miles from the Waco Courthouse. *See* https://goo.gl/maps/wqLxn9FcidRZNJKeA.

Therefore, this factor weighs against transfer, or at worst, is neutral.[6]

### 3. *Microsoft fails to prove the cost of attendance for willing witnesses favors transfer.*

Microsoft fails to prove the cost of attendance for willing witnesses favors transfer. Under this factor, the convenience of willing, non-party witnesses is the most important consideration. *Fintiv v. Apple,* No. 6:19-cv-372-ADA, 2019 WL 4743678, at *6. (W.D. Tex. Sept. 13, 2019). Here, Microsoft does not offer any evidence that Austin is more convenient for willing, non-party witnesses.

Microsoft also fails to prove Austin is clearly more convenient for <u>out-of-state party witnesses</u>. This Court gives little weight to party witnesses. *VLSI Tech. LLC v. Intel Corp.*, 6:19-CV-00254-ADA, 2019 WL 8013949, at *5 (W.D. Tex. Oct. 7, 2019). Further, it has previously recognized "the Austin and Waco Divisions are equally convenient for out-of-state witnesses." *Id.* Despite this, Microsoft argues Austin is more convenient for its out-of-state party witnesses because they can use Microsoft's Austin facilities for trial preparation. There are at least two problems with this argument. First, Microsoft admits use of its Austin facilities is limited due to COVID-19 restriction. Second, Waco is more convenient for WSOU's witnesses because that is where WSOU's office is located. Transferring this case to give out-of-state Microsoft witnesses the convenience of using Microsoft's Austin office during trial would deprive WSOU's witnesses (one of whom *resides* in Waco) the convenience of using WSOU's Waco office during trial. These cases should not be transferred merely to shift inconveniences of party witnesses. *X Techs., Inc. v. Marvin Test Sys., Inc.*, CIV.A.SA-10-CV-319-X, 2010 WL 2303371, at *6 (W.D. Tex. June 7, 2010) ("The party moving to transfer must persuade the Court that transfer would signify more than shifting inconvenience from one party to another").

Likewise, Microsoft fails to prove Austin is clearly more convenient for <u>in-state party witnesses</u>. In seven of the cases (455, 456, 457, 458, 460, 462 and 464), Microsoft admits there

---

[6] Moreover, the individuals identified by Microsoft are party witnesses – not non-party witnesses. Because party witnesses can be secured without court order, this factor weighs against transfer, or is at worst neutral for that reason as well.

are <u>no</u> Microsoft personnel in Austin in the "relevant organization at Microsoft." *See* Def.'s Mot. at 9-10 (citing Eaves Declaration). Microsoft alleges there are 11 employees in "Marketing groups" in Austin but does not allege any of them have relevant information concerning any of these cases. In these cases, the *only* willing in-state witness identified by either party is Matt Hogan, WSOU's Managing Director of Business Development, who resides in Waco. *See* Hogan Decl. ¶ 2. The convenience of willing witnesses clearly weighs *against* transfer. Speculation that Microsoft employees in Austin might be witnesses in *other* cases should be given no weight. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.") (internal quotes omitted).

In the five cases where Microsoft alleges it has Austin employees in the "relevant organization at Microsoft," Microsoft does not specifically identify any employees or allege that they have relevant information that makes them potential witnesses. Further, Microsoft discloses only the number of employees assigned to the Austin office but does not disclose where those employees reside (by city[7]) or whether they work from home. At most, Microsoft offers enough information to support a speculation that there *might* be potential Microsoft witnesses in Austin. More likely, all Microsoft witnesses will come from its office in Washington. Eaves Decl. ¶¶ 9–14. In contrast, WSOU has at least one witness, Matt Hogan, who resides and works in Waco. WSOU's specifically identified witness who resides and works in Waco should be given more weight than the speculation that there might be a Microsoft witness in Austin.

No weight should be given to Microsoft's numbers game. *See*, *e.g.*, Eaves Decl. ¶¶ 8, 12. This Court has previously stressed that it does not simply count the number of alleged witnesses. Instead, it "looks at the totality of the circumstances, including but not limited to, the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses

---

[7] WSOU does not expect Microsoft to give personal address information for its potential witnesses.

goes to an element of a claim, the amount of public information available to the parties, etc." *Fintiv, Inc. v. Apple Inc.*, 2019 WL 4743678 at *4. Here, Microsoft argues Austin is more convenient for Microsoft's party witnesses without identifying a single, specific Microsoft witness. Microsoft offers no information that allows this Court to evaluate "the likelihood that a witness may have relevant information." Moreover, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue § 1404(a) is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017) (quoting *In re Genentech*, *Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). Because the distance between Microsoft's office location in Austin and the Waco Division courthouse is less than 100 miles, Microsoft's convenience argument should carry little, if any, weight. Therefore, this factor weighs against transfer.

### 4.  *Other practical problems weigh against transfer.*

When examining practical problems, this Court considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "Multiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer." *Uniloc USA, Inc. v. Chief Architect*, Inc., No. 6:15-CV-1003-RWS-KNM, 2016 WL 9229319, at *5 (E.D. Tex. Dec. 2, 2016) (citing *In re Volkswagen of Am., Inc*., 556 F.3d 1349, 1351 (Fed. Cir. 2009)).

Here, Microsoft cannot possibly prevail on its motion to transfer the seven cases where it admits it has *no* personnel in Austin in the "relevant organization at Microsoft" (the 455, 456, 457, 458, 460, 462 and 464 cases). Even if Austin is more convenient for Austin-based Microsoft witnesses in the other five cases (something Microsoft has not shown), judicial economy favors retaining all twelve cases. In addition, the Waco Division is simply a less congested venue than

the Austin Division.[8] Additionally, the Austin Division has a higher number of criminal cases, which impacts civil trial settings. *Id.* Thus, a transfer in this case to a forum with a higher level of case congestion is an act *against* judicial economy.

**B.      The public interest factors do not favor transfer.**

   *1. Difficulties flowing from court congestion weigh heavily against transfer.*

   The administrative difficulties flowing from court congestion in Austin, which has one of the highest caseloads per judge in the country, weighs heavily against transfer. The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. This Court recently pointed out that court congestion in the Austin Division is so high that it distorts the overall WDTX time-to-trial, which "is not representative of the time-to-trial in the Waco Division." *Solas OLED Ltd. v. Apple Inc.*, 6:19-CV-00537-ADA, 2020 WL 3440956, at *7 (W.D. Tex. June 23, 2020) ("Since the Austin Division has one of the highest caseloads per judge in the country, the overall WDTX time-to-trial is not representative of the time-to-trial in the Waco Division which has a patent-specific Order Governing Proceedings ('OGP')." (emphasis added). The Austin Division not only has one of the highest caseloads per judge in the country, but it does not have an OGP or the familiarity with patent procedures that this Court has. *Id.* (acknowledging the Austin Division has "one of the highest caseloads per judge in the country").

   These cases differ from several cases where this Court transferred cases to Austin because: (1) WSOU's principal place of business is Waco and WSOU has no offices in Austin; and (2) given recent changes in the District, a transfer to Austin will deprive the parties of this Court's experience with patent cases and its OGP. *See, e.g., Voxer, Inc.,* 2020 WL 3416012, at *7 (stating Voxer has no significant presence in the Waco Division).

   *2. The local interest in having localized interests decided weighs against transfer.*

   Microsoft's contention that Waco has no local interest in these cases is false. First, WSOU

---

[8] *See* https://www.txwd.uscourts.gov/wp-content/uploads/District%20Statistics/2019/Fiscal%20Year%20Statistics%20-%202019.pdf

is a company headquartered in downtown Waco. Hogan Decl. ¶ 1. Secondly, and contrary to Microsoft's assertion, WSOU does create jobs in Waco. In fact, WSOU has job postings and is in the process of hiring several Baylor students. *Id.* ¶¶ 5-6. Although WSOU does not employ as many people as Microsoft, WSOU's impact on the local community in Waco is undoubtedly greater than Microsoft's impact in Austin. *Id.* ¶¶ 5-6. WSOU has significant roots in the Waco community. WSOU pays local taxes, hired a local business to renovate its corporate headquarters (an $80,000 project), and hired a local vendor to manage WSOU's servers. *Id.* ¶¶ 4-6. Moreover, WSOU has engaged the local college, Baylor University, in hosting several ventures designed to benefit the city of Waco. *Id.* (WSOU is working with the Baylor Law IP clinic to offer a quarterly webinar series for Baylor law and local inventors); (Baylor TTO). Therefore, Waco has a significant localized interest in the deciding this case and this factor weighs against transfer.

### 3. Familiarity with the forum.

Familiarity with the forum weighs against transfer because this Court has familiarity with patent laws and patent specific rules. Unlike the Waco Division, Austin Division does not have standing orders specific to patent law nor specialized patent procedures.

### 4. Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral.

## CONCLUSION

On balance, the private and public interest factors weigh against transfer. Thus, because Microsoft has not met its "substantial burden" in showing that a transfer to the Austin Division is "clearly more convenient," its Motion should be denied.

Dated: October 16, 2020                    Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Brett A. Mangrum
Texas State Bar No. 24065671
Travis Lee Richins
Texas State Bar No. 24061296
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 16, 2020 the foregoing document was served upon all counsel of record via the court's electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ James L. Etheridge*
James L. Etheridge