# EXHIBIT I

<u>**PATENT**</u>

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

| | |
|---|---|
| Application No.: | 11/393,900 |
| Filing Date: | March 31, 2006 |
| Applicant: | Girish P. Chandranmenon et al |
| Group Art Unit: | 2452 |
| Examiner: | Neeraj K. Utreja |
| Title: | METHODS AND DEVICES FOR MAINTAINING SESSIONS BASED ON PRESENCE STATUS INFORMATION |
| Attorney Docket: | 129250-002209/US |

Customer Service Window                                              January 11, 2010
Randolph Building
401 Dulany Street
Alexandria, VA  22314
<u>**Mail Stop Amendment**</u>

<u>**Amendment**</u>

Sir/Madam:

In conjunction with the filing of a Request For Continued Examination, the Applicants submit the following Response.

A **claim listing** begins on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

| | Claims remaining after Amendment | | Highest number previously paid for | | Present extra |
|---|---|---|---|---|---|
| **Total** | 22 | - | 25 | = | 0 |
| **Independent** | 2 | - | 5 | = | 0 |

Application No. 11/393,900<br>Docket No. 129250-002209/US

## IN THE CLAIMS

The following is a complete listing of claims with a status identifier in parenthesis. Applicants note that claims 13 and 15-25 have been canceled without prejudice to, or disclaimer of, their subject matter and claims 26-36 have been added. No new matter has been added. The subject matter of claims 13 and 15-25 has been incorporated into claims 12 and/or 26-36, respectively.

### LISTING OF CLAIMS

1.  (Currently Amended) <u>The method as in claim 12 further</u> ~~A method for maintaining a session~~ comprising:

    monitoring a presence status of a client <u>device associated with the user</u> ~~in an on-line game~~; and

    maintaining an on-line gaming session on behalf of the <u>user</u> ~~client~~ even when the status indicates the client <u>device</u> is inactive.

2.  (Currently Amended) The method as in claim 1 further comprising forwarding messages to the client <u>device</u> when the client <u>device</u> is active, wherein the messages were received when the client <u>device</u> was inactive.

3.  (Canceled).

4.  (Original) The method as in claim 2 wherein the messages are forwarded wirelessly.

5.  (Currently Amended) The method as in claim 1 further comprising collecting presence status information concerning <u>the</u> one or more third party users even when the client <u>device</u> is inactive.

6.  (Currently Amended) The method as in claim 1 further comprising forwarding messages to the client <u>device</u> in order to update one or more indicators, wherein at least one of the indicators is associated with presence status information of <u>the</u> one or more third party users.

7.  (Currently Amended) <u>The method as in claim 12 further</u> ~~A method for communicating with a proxy agent~~ comprising:

    forwarding <u>the</u> [[a]] request <u>from the client device,</u> to initiate an on-line gaming session<u>,</u> to a proxy agent; and

    receiving messages <u>at the client device</u> from the proxy agent during an active presence state, wherein the messages were <u>originally</u> received by the agent when the client <u>device</u> was inactive.

Page 2

Application No. 11/393,900
Docket No. 129250-002209/US

8.   (Canceled).

9.   (Currently Amended) The method as in claim 7 further comprising exchanging signaling messages between the client device and [[with]] the proxy agent using short binary messages.

10.   (Currently Amended) The method as in claim 7 wherein the request is forwarded wirelessly from the client device to the proxy agent.

11.   (Currently Amended) The method as in claim 7 further comprising receiving one or more messages from the agent at the client device, wherein at least one of the messages is used to update at least one indicator associated with presence status information of the one or more third party users.

12.   (Currently Amended) A method for forming one or more groups associated with one or more online gaming sessions comprising:

   receiving one or more identities of one or more third party users;

   comparing profiles of the identified third party users, with attributes of a request to initiate an online gaming session, to determine the gaming skill level of if any of the third party users are qualified to participate in the session; and

   forming a gaming group containing those third party users that have the substantially same gaming skill level as that required by the request qualify to participate in the session along with a user that initiated the request.

13.   (Canceled).

14.   (Currently Amended) The method as in claim 12 further comprising:

   forwarding requirements of the [[a]] request on to a third party lobby to identify the third party users that satisfy the request;

   receiving an identification of each third party user that satisfies the request; and

   forming the gaming [[a]] group containing those third party users that satisfy the request along with the [[a]] user that initiated the request.

15.   (Canceled).

16.   (Canceled).

17.   (Canceled).

18.   (Canceled).

19.   (Canceled).

20.   (Canceled).

21.   (Canceled).

22.   (Canceled).

23.   (Canceled).

Application No. 11/393,900
Docket No. 129250-002209/US

24.     (Canceled).

25.     (Canceled).

26.     (New) A system for forming one or more groups associated with one or more online gaming sessions comprising:

   a lobby, the lobby operable to receive one or more identities of one or more third party users;

   compare profiles of the identified third party users, with attributes of a request to initiate an online gaming session, to determine the gaming skill level of the third party users; and

   form a gaming group containing those third party users that have the substantially same gaming skill level as that required by the request along with a user that initiated the request.

27.     (New) The system as in claim 26 wherein the lobby is further operable to:

   forward requirements of the request on to a third party lobby to identify the third party users that satisfy the request;

   receive an identification of each third party user that satisfies the request; and

   form the gaming group containing those third party users that satisfy the request along with the user that initiated the request.

28.     (New) The system as in claim 26 further comprising:

   a proxy agent, the agent operable to monitor a presence status of a client device associated with the user; and

   maintain an on-line gaming session on behalf of the user even when the status indicates the client device is inactive.

29.     (New) The system as in claim 28, wherein the proxy agent is further operable to forward messages to the client device when the client device is active, wherein the messages were received when the client device was inactive.

30.     (New) The system as in claim 29, wherein the messages are forwarded wirelessly.

31.     (New) The system as in claim 28, wherein the proxy agent is further operable to collect presence status information concerning the one or more third party users even when the client device is inactive.

32.     (New) The system as in claim 28, wherein the proxy agent is further operable to forward messages to the client device in order to update one or more indicators, wherein at least one of the indicators is associated with presence status information of the one or more third party users.

Application No. 11/393,900
Docket No. 129250-002209/US

33.     (New) The system as in claim 26 further comprising:

a client device, the device operable to forward the request to a proxy agent; and

receive messages from the proxy agent during an active presence state, wherein the messages were originally received by the agent when the client device was inactive.

34.     (New) The system as in claim 33, wherein the device is further operable to exchange signaling messages with the proxy agent using short binary messages.

35.     (New) The system as in claim 33, wherein the device is operable to forward the request wirelessly to the proxy agent.

36.     (New) The system as in claim 33, wherein the device is further operable to receive one or more messages from the agent, wherein at least one of the messages is used to update at least one indicator associated with presence status information of the one or more third party users.

Application No. 11/393,900
Docket No. 129250-002209/US

## REMARKS

### A. The Section 101 Rejection

Claim 15 was rejected under 35 U.S.C. §101. The Applicants respectfully disagree and traverse this rejection for at least the following reasons.

Without acknowledging the propriety of the Examiner's position and without waiving any position they may have, the Applicants note that this rejection appears to be moot because claim 15 has been canceled.

### B. The Section 103 Rejections Based on Shah and Hardistry

Claims 1, 2, 4, 5-7, 9-11, 15, 16, 18-20 and 22-24 were rejected under 35 U.S.C. §103(a) based on the combination of Shah et al., U.S. Patent Application Publication No. 2005/0071433 ("Shah") and Hardistry et al, U.S. Patent Application Publication No. 2005/0239550 ("Hardistry"). Applicants respectfully disagree and traverse these rejections for at least the following reasons.

**(i) claims 1, 2, 4-7 and 9-11**

Each of the rejected claims now depends on independent claim 12. It is to this claim that Applicants now turn, it being understood that the remarks which follow apply to claims 1, 2, 4-7 and 9-11 as well.

Claim 12 includes the features of: (a) comparing profiles of identified third party users, with attributes of a request to initiate an online gaming session, to determine the gaming skill level of the third party users; and (b) forming a gaming group containing those third party users that have the substantially same gaming skill level as that required by the request along with a user that initiated the request.

The Examiner appears to implicitly, if not explicitly, acknowledge that neither Shah nor Hardistry disclose such features.

In the Office Action the Examiner, in the rejection of claim 12, appears to rely on U.S. Patent Application Publication No. 2004/0162881 ("Digate") as disclosing the features of claim 12. Applicants disagree.

Digate appears to be directed at forming instant messaging (IM) groups. More particularly, in Digate so-called "stand-in" members may be added to an IM group based on their professional expertise (e.g., finance). Digate does not appear to disclose or suggest that any group, IM or online gaming, is formed based on the gaming skill level required by a request initiated by a user, as in claim 12.

The Applicants note that new claims 28-36 are patentable over the combination of Shah and Hardistry (and Digate) based on similar rationales.

Application No. 11/393,900<br>
Docket No. 129250-002209/US

Accordingly, Applicants respectfully request withdrawal of the pending rejections and allowance of claims 1, 2, 4-7 and 9-11 as well as new claims 28-36.

### (ii) claims 15, 16, 18-20 and 22-24

The Applicants note that claims 15, 16, 18-20 and 22-24 have been canceled. Therefore, these rejections appear to be moot.

### C.      The Section 103 Rejections Based on Digate and Hardistry

Claims 12-14 were rejected under 35 U.S.C. §103(a) based on the combination of Digate et al., U.S. Patent Application Publication No. 2004/0162881 ("Digate") and Hardistry. Applicants respectfully disagree and traverse these rejections for at least the following reasons.

Of the rejected claims, claim 12 is independent. It is to this claim that Applicants now turn, it being understood that the remarks which follow apply to claim 14 (claim 13 has been canceled).

Claim 12 includes the features of: (a) comparing profiles of identified third party users, with attributes of a request to initiate an online gaming session, to determine the gaming skill level of the third party users; and (b) forming a gaming group containing those third party users that have the substantially same gaming skill level as that required by the request along with a user that initiated the request.

In the Office Action the Examiner relies upon Digate as disclosing the features of claim 12. Applicants disagree.

As explained above, while Digate appears to disclose the formation of IM groups using "stand-in" members who may be added to an IM group based on their professional expertise (e.g., finance), it does not appear to disclose or suggest the formation of any group, IM or online gaming, based on the gaming skill level required by a request initiated by a user, as in claim 12.

The Applicants note that new claims 26 and 27 are patentable over the combination of Digate and Hardistry based on similar rationales.

Accordingly, Applicants respectfully request withdrawal of the pending rejections and allowance of claims 12 and 14, as well as claims 26 and 27.

### D.      The Section 103 Rejections Based on Shah, Hardistry and Digate

Claim 25 was rejected under 35 U.S.C. §103(a) based on the combination of Shah, Hardistry and Digate. Applicants disagree and traverse this rejection for at least the following reasons.

Without acknowledging the propriety of the Examiner's position and without waiving any position they may have, the Applicants note that this rejection appears to be moot because claim 25 has been canceled..

Page 7

Application No. 11/393,900
Docket No. 129250-002209/US

Should there be any outstanding matters that need to be resolved in the present application the Examiner is respectfully requested to contact John E. Curtin at the telephone number listed below.

If necessary, the Commissioner is hereby authorized in this, concurrent, and future replies, to charge payment or credit any overpayment to Deposit Account No. 50-3777 for any additional fees required under 37 C.F.R. § 1.16 or under 37 C.F.R. § 1.17; particularly, extension of time fees.

Respectfully submitted,

**CAPITOL PATENT & TRADEMARK LAW FIRM, PLLC.**

By:     /John E. Curtin/

John E. Curtin, Reg. No. 37,602
P.O. Box 1995
Vienna, Virginia 22183
(703) 266-3330